## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**RODNEY H. YOUNG**,

        Plaintiff,

    vs.                              No. 07cv535 MCA/WDS

**DICK KEMPTHORNE, Secretary,**
**DEPARTMENT OF THE INTERIOR**,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on *Defendant's Motion to Dismiss* [Doc. 32], filed May 29, 2008, and *Defendant's Motion for Summary Judgment* [Doc. 34], also filed May 29, 2008. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court denies the motion to dismiss and grants the motion for summary judgment.

## I. BACKGROUND

The following facts are taken from the summary-judgment record and are either uncontroverted or viewed in the light most favorable to Plaintiff Rodney Young.

In 1991, Mr. Young was employed by the Department of the Interior (DOI), Bureau of Indian Affairs (BIA), Office of the Director, Office of Indian Education Programs (OIEP), serving as a GM-15, Financial Manager, stationed in Albuquerque, New Mexico. Among the duties and responsibilities of the Financial Manager are directing financial policies and

procedures for the OIEP that are consistent with the policies and procedures of the DOI, other federal agencies, and Congress.

Between November 29, 1999 and May 20, 2000, Mr. Young was designated as an Acting Education Line Officer (ELO) for the Fort Apache/Pima office of the OIEP. As such, one of his responsibilities was to ensure the disbursement of funds in accordance with federal guidelines.

One of the schools within the Fort Apache/Pima Office of the OIEP is the Theodore Roosevelt Boarding School (TRS), located at Fort Apache, Arizona. TRS is a grant school. In a March 28, 2000 memorandum sent to, among others, ELOs, Assistant Secretary for Indian Affairs, Kevin Gover explained that the practice of obligating appropriated funds through grants to circumvent contracting and procurement regulations was not authorized, and further advised that "as the allottee of appropriated funds you are accountable for the distribution of funds in accordance with all applicable laws and regulations." Notwithstanding the directive of the memorandum, Mr. Young subsequently engaged in unauthorized procurement practices when he used operation, repair, and maintenance (O&M) money to reimburse TRS for payment it made on a contract to drill a new well at the school. TRS was not authorized under its grant to receive O&M money.

At his deposition, Mr. Young did not deny that he had engaged in the alleged activity. He explained, however, that when he did so he was acting in the interest of the TRS students' health and safety, which, in his opinion, always justifies the suspension of relevant rules and regulations. He also conceded that in acting as he had, he did an "end run," which others

might have construed as improper procurement. [Doc. 35; Exh. D, depo. of R. Young at 144].
In approximately the same time period, Mr. Young charged nearly $30,000 on his government credit card to house TRS students at the Hon-dah Casino because, Mr. Young contended, TRS dormitories had become unsafe and uninhabitable.

On March 16, 2001, the Office of Inspector General (OIG) began an investigation into allegations that Mr. Young had engaged in "unauthorized commitments and circumvention of procurement practices." [Doc. 35; Exh. A, Att. 1].  A *Report of Investigation* (the *Report*) was issued on July 28, 2003, and it confirmed that Mr. Young had circumvented procurement practices in connection with the drilling of the new well.  The *Report* also confirmed that, among other things, Mr. Young

> (1) circumvented procurement practices when he purchased $200,000 worth of computers and related equipment with his government credit card;
> (2) put nearly $30,000 in charges at the Hon-dah Casino and Resort on his government credit card, which charges were later transferred to central billing to be paid by the OIEP;
> (3) engaged in a pattern of "split procurements," which appeared to be in conflict with Federal Acquisition Regulations;
> (4) approved travel vouchers that had previously been disapproved by the requesting employee's authorizing official;
> (5) allowed others to use his government credit card number; and
> (6) arranged for the advance payment for Internet and cell-phone service, in violation of DOI and BIA credit card policy.

[Id.].

By the time the *Report* was issued, Mr. Young was no longer serving as an ELO; he had become the OIEP's Deputy Director for Policy, Administration and Budget, and in

August 2003, Edward Parisian became his supervisor.  On August 13, 2003, Mr. Parisian

sent a memorandum to Mr. Young, informing him that his position was being moved to the

OIEP in Washington, D.C.  Mr. Parisian's correspondence to Mr. Young explained, in part:

> If you accept, you will be entitled to relocation expenses.  If you
> decline, you are not eligible for Discontinued nor Optional
> retirement under the Federal Employees Retirement System.
> The reason is you are age 49 years with 19 years of service.
> Eligibility for Optional Retirement (MRA) is age (56) with 10
> years of service.

[Doc. 39; Exh. 2].  At his deposition, Mr. Young conceded that the proposed transfer was a

purely lateral move, which would not result in a loss of pay, a loss of benefits, or "[n]o loss

of nothing." [Doc. 35; Exh. D at 71-72].   Still, Mr. Young viewed Mr. Parisian's

memorandum as threatening in tone and discriminatory for its mention of his age and years

of service. [Doc. 39; Exh. 1, Att. 1].   On August 18, 2003, Mr. Young accepted the

relocation, although the relocation never actually took place. [Doc. 35 at 4, ¶ 14; Doc. 39;

Exh. 2 at 2.].

In September 2003, Glenn Himebaugh, a Human Resources Specialist with the BIA

in Albuquerque, was asked to determine if the findings in the *Report* warranted taking

disciplinary action against Mr. Young.  Mr. Himebaugh was of the opinion "that there were

very serious allegations raised in the *Report* and the *Report* outlined specific instances of

misconduct that could result in severe discipline being issued to Mr. Young."  When he

spoke with Mr. Parisian on October 31, 2003, Mr. Himebaugh advised that "the discipline

should be between a suspension and a removal." [Doc. 35; Exh. A, Himebaugh Declaration].

4

On November 5, 2003, Mr. Young filed an EEOC complaint in which he alleged that the decision to change his duty station and relocate him was motivated by age discrimination and also constituted retaliation for Mr. Young's having "assisted" co-worker John Wahnee in filing his own EEOC complaint against Mr. Parisian earlier that year.[1]

On January 12, 2004, Mr. Parisian sent Mr. Young a memorandum with the subject line, "Proposed Removal." [Doc. 35; Exh. E].  In the memorandum, Mr. Parisian noted his reliance upon the *Report* and detailed a number of charges of misconduct under the following categories: "Misuse of Government Charge Card," "Improper Procurement Practices," and "Failure to Promptly Pay Your Government Charge Card Bill."  All of the detailed charges of misconduct occurred between the years 2000 and 2002 and, therefore, before Mr. Parisian became Mr. Young's supervisor.  [See generally id.; see also Doc. 35 at 4, ¶ 9 ("Edward Parisian became Plaintiff's supervisor in August 2003.")].  Mr. Parisian later explained that

> because of Mr. Young's high-level position, the fact that he knew or should have known that the actions he took were prohibited by Federal regulations, the fact that the offenses were not a single act of misconduct, but an ongoing pattern of inexcusable conduct and the fact that I had a complete loss of confidence in Mr. Young led me to the ultimate decision that I had to propose his removal.

---

[1]  In 2002, John Wahnee became Mr. Parisian's assistant.  Mr. Wahnee suffered from Guillain-Barre Syndrome, an autoimmune condition that affects the peripheral nervous system.  Although he had been assigned to Albuquerque to allow him to be closer to his doctors, he and Mr. Young contend that Mr. Parisian repeatedly attempted to have Mr. Wahnee transferred to remote duty stations where he would be unable to receive adequate medical treatment.  They also allege that Mr. Parisian made a number of remarks about Mr. Wahnee's age.  According to Mr. Young, he "assisted Wahnee in an EEO complaint against Parisian filed in July, 2003, by confirming that Parisian knew of Wahnee's need for continuing accommodation but ignored that need because of personal dislike and age bias." [Doc. 39 at 9].

[Doc. 35; Exh. B, Parisian Declaration at 5].

Although Mr. Parisian made the decision to propose Mr. Young's removal, it was Michael Olsen, Principal Deputy Secretary for Indian Affairs, who actually effected the removal by signing a *Memorandum, Decision to Remove* on December 3, 2004.  Mr. Olsen has explained that the *Memorandum, Decision to Remove* outlined the charges against Mr. Young that had been set forth in the *Report*. [Doc. 35; Exh. F, Olsen Declaration].  It is undisputed that "Michael Olsen removed [Mr. Young] solely for the reasons set forth in the [*Memorandum, Decision to Remove*]." [Doc. 35 at 5; ¶ 17; Doc. 39 at 2].

On January 18, 2005, Mr. Young began pre-complaint counseling and, on March 8, 2005, after having received a *Notice of Final Interview and Right to File a Discrimination Complaint*, filed a *Complaint of Discrimination* with the DOI. [Doc. 35; Exh G.].  Under "Allegations of Discrimination," Mr. Young wrote the following: "*Retaliation for being a witness Against Agency on multiple complaints. 1/12/2004 and 12/10/2004[,] 3/22/2004, 4/13/2004, 4/20/2004, 4/29/2004, etc.*"  There is a separate section on the *Complaint* that allows the complainant to check a box indicating the basis or bases upon which he believes he has been discriminated.  Mr. Young marked an "X" in the space next to "Reprisal."  The space next to "Age" was left blank. [Id.].

On April 14, 2005, Mr. Young filed a *Complaint and Demand for Jury Trial*, naming then-Secretary of the DOI, Gale Norton, as Defendant.  His action was docketed as number 05cv427 and assigned to the Honorable William Johnson.  [See docket in 05cv427].  On September 1, 2006, Judge Johnson granted Defendant's *Motion to Dismiss Claims Pursuant*

*to Fed.R.Civ.P 12(b)(1)* on the ground that Mr. Young had "failed to exhaust his administrative remedies with regard to his removal from federal service [because he] filed an EEO *Complaint* with regard to his removal on March 8, 2005 but abandoned the administrative process by filing his *Complaint* in this Court on April 14, 2005." [Doc. 114 in 05cv427 at 5]. Judge Johnson continued:

> On September 22, 2005, the EEO Office of the Department of Interior dismissed Plaintiff's March 8, 2005 EEO *Complaint* because it was the basis of a civil action pending in district court. The EEO dismissal was not a decision on the merits, so it did not serve to exhaust Plaintiff's administrative remedies with regard to his claims arising from his removal from federal service. . . . Because Plaintiff failed to exhaust his administrative remedies with regard to his removal from federal service, this Court lacks subject matter jurisdiction over these claims.

[Id.].

By *Memorandum Opinion and Order* entered October 26, 2006, Judge Johnson granted *Defendant's Motion for Summary Judgment*, expressly concluding, among other things, that Mr. Young had "failed to show that he engaged in protected activity or show any causal connection between the alleged protected activity and the alleged adverse action."[2]

---

[2] As explained, Judge Johnson disposed of Mr. Young's claims arising from his *removal* from federal service in the *Memorandum Opinion and Order* granting Defendant's motion to dismiss for lack of subject matter jurisdiction. When Judge Johnson entered his *Memorandum Opinion and Order* granting Defendant's summary-judgment motion, the only claims that remained were those alleging discrimination and reprisal related to Mr. Young's *proposed relocation* to Washington, D.C. Notwithstanding that in 05cv427 Mr. Young was complaining of both his proposed relocation and his ultimate removal, the alleged protected activity underlying both claimed adverse actions—both here and before Judge Johnson—was Mr. Young's support and assistance for John Wahnee's EEOC complaint against Edward Parisian. [See Doc. 99 in 05cv427 at 27 ("Plaintiff makes out a prima facie case of reprisal. He engaged in protected activity on behalf of John Wahnee, both in assisting him in resisting Parisian's

7

[Doc. 130 in 05cv427 at 9].  Even assuming that Mr. Young had engaged in protected activity (by assisting Mr. Wahnee with his EEOC complaint against Mr. Parisian), Judge Johnson determined that there was no causal connection between that activity and Mr. Young's proposed relocation, because Mr. Young received his relocation letter on August 13, 2003, but Mr. Wahnee did not engage in any protected activity for which Mr. Young could have provided assistance until September 10, 2003. [Id. at 9-10].

On May 31, 2007, Mr. Young filed the *Complaint and Demand for Jury Trial* that was docketed as number 07cv535 and assigned to me.  In his one-count *Complaint*, Mr. Young alleges that Defendant retaliated against him for having "engag[ed] in protected activity on behalf of himself and others, in violation of The Rehabilitation Act of 1973, the Age Discrimination in Employment Act, and the Title VII of the Civil Rights Act of 1983, each as amended." [Doc. 1 at 10].  On May 29, 2008, Defendant filed *Defendant's Motion to Dismiss* [Doc. 32] and *Defendant's Motion for Summary Judgment* [Doc. 34].

## II. ANALYSIS

### A.    *Defendant's Motion to Dismiss* [Doc. 32]

Defendant has moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(1), which allows for the dismissal of a claim for lack of subject matter jurisdiction.  See Fed.R.Civ.P. 12(b)(1). Generally, Rule 12(b)(1) motions to dismiss for lack of jurisdiction will come in the form of

---

determined attempts at disability and age discrimination, and in supporting Wahnee's eeo case."); see also Doc. 39 in 07cv535 at 14-15 ("Plaintiff clearly meets the requirements for a prima facie case of reprisal. Plaintiff engaged in protected activity when he assisted Wahnee beginning in 2003, both by supporting his EEO claim and helping him resist Parisian's determined attempts at disability and age discrimination.")].

(1) a facial attack, in which case the movant merely challenges the sufficiency of the complaint, requiring the district court to accept the allegations in the complaint as true; or (2) a factual attack, where the movant goes beyond the allegations in the complaint and challenges the facts upon which subject matter jurisdiction depends. Paper, Allied-Industrial, Chemical And Energy Workers Intern. Union v. Continental Carbon Co., 428 F.3d 1285, 1292 (10th Cir. 2005). Defendant here has launched a factual attack, meaning this Court "must look beyond the complaint and has wide discretion to allow documentary and even testimonial evidence. . . ." Id. Reference to evidence outside the pleadings does not convert the motion to dismiss into a motion for summary judgment; instead, only when resolution of the jurisdictional question is intertwined with the merits of the case is it necessary to convert a Rule 12(b)(1) motion into a Rule 56 motion. Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995).

By letter dated September 22, 2005, Sharon Eller, Director, Office of Civil Rights (DOI), wrote to Mr. Young's attorney that the DOI had become aware that action had been initiated in federal district court while Mr. Young's EEOC complaint (docket number BIA-05-027) was pending. Accordingly,

> *it [was] the final agency decision* of the Department of the Interior to dismiss the Docket Number BIA-05-027 in its entirety due to the fact that the issues contained in Docket Number BIA-05-027 serve[d] as the basis of a pending civil action in a United States District Court. . . .

[Doc. 33; Exh. F at 2 (emphasis added)]. Ms. Eller's letter then advised of Mr. Young's appeal rights, noting that "[i]n lieu of an appeal to the Commission, [Mr. Young could] file

9

a civil action in an appropriate United States District Court within <u>90 calendar days</u> of receipt of the final decision." [<u>Id.</u> at 3 (emphasis in original)].

Section 1614.407 of the Code of Federal Regulations explains when an individual who has filed an EEOC complaint may then file a civil action in the appropriate federal district court.  The pertinent provisions state that the

> individual . . . is authorized under [T]itle VII, the ADEA and the Rehabilitation Act to file a civil action in an appropriate United States District Court:
>
> (a) Within 90 days of receipt of the final action on an individual or class complaint if no appeal has been filed;
>
> (b) After 180 days from the date of filing an individual or class complaint if an appeal has not been filed and final action has not been taken. . . .

29 C.F.R. § 1614.407(a), (b).

Mr. Young's EEOC complaint was dismissed on September 22, 2005, with the express provision that it was "the final agency decision of the Department of the Interior. . . ." [Doc. 33; Exh. F at 2].  Mr. Young did not file an appeal because the action docketed as number 05cv427 was pending before Judge Johnson. [<u>See</u> Doc. 33 at 3].  Thus, Mr. Young had 90 days from on or about September 22, 2005 in which to file the *Complaint and Demand for Jury Trial* that is now before me.  <u>See</u> 29 C.F.R. § 1614.407(a).  Mr. Young filed that *Complaint* on May 31, 2007.  Alternatively, even if (notwithstanding the express language of Ms. Eller's September 22, 2005 correspondence) the dismissal of Mr. Young's EEOC complaint could somehow be construed to be something other than a final agency

10

decision, Mr. Young would have been authorized to file the instant *Complaint* after 180 days from the filing of his EEOC complaint.  See 29 C.F.R. § 1614.407(b).  The EEOC complaint was filed March 8, 2005.  Under either scenario, I conclude that subject matter jurisdiction exists here.  *Defendant's Motion to Dismiss* will be denied.

### B.   ***Defendant's Motion for Summary Judgment* [Doc. 34]**

Summary judgment under Fed.R.Civ.P. 56(c) "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading. . . ."  Fed.R.Civ.P. 56(e).  Rather, "the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial."  Id.  Judgment is appropriate "as a matter of law" if the nonmoving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Lopez v. LeMaster, 172 F.3d 756, 759 (10th Cir. 1999).

In order to warrant consideration by the Court, the factual materials accompanying a motion for summary judgment must be admissible or usable at trial (although they do not necessarily need to be presented in a form admissible at trial).  See Celotex, 477 U.S. at 324. It is not the court's role, however, to weigh the evidence, assess the credibility of witnesses, or make factual findings in ruling on a motion for summary judgment.  Rather, the Court

11

assumes the evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor.  See Hunt v. Cromartie, 526 U.S. 541, 551-52 (1999).

It bears noting that "[w]hen a case turns on the intent of one party, as employment discrimination claims often do, a 'trial court must be cautious about granting summary judgment.'"  Douglas v. Victor Capital Group, 21 F.Supp.2d 379, 388 (S.D.N.Y. 1998) (quoting Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1224 (2nd Cir. 1994)).  Since it is unlikely that the employer has left direct evidence of discriminatory intent, "the Court must carefully comb the available evidence in search of circumstantial proof to undercut the [employer's] explanations for its actions."  Id.  "Nonetheless, when the defendant provides convincing evidence to explain its conduct and the plaintiff's argument consists of purely conclusory allegations of discrimination, the Court may conclude that no material issue of fact exists and it may grant summary judgment to the defendant."  Id.

To establish a prima facie case of retaliation under Title VII, the ADEA, or the Rehabilitation Act, a plaintiff must show that (1) he engaged in protected opposition to discrimination; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse action.  Fischer v. Forestwood Co., Inc., 525 F.3d 972, 979 (10th Cir. 2008); see also Corneveaux v. CUNA Mut. Ins. Group, 76 F.3d 1498, 1507 (10th Cir. 1996) (ADEA); Doebele v. Sprint/ United Mgmt. Co., 342 F.3d 1117, 1135 (10th Cir. 2003) (ADA case).  However, "[w]here timing

12

is the only basis for a claim of retaliation, and gradual adverse job actions began well before the plaintiff had ever engaged in any protected activity, an inference of retaliation does not arise." Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 95 (2nd Cir. 2001).

If the plaintiff establishes his prima facie case, the burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). If the employer satisfies its burden, the plaintiff must then demonstrate that the legitimate reason is merely a pretext for racial discrimination. Mattioda v. White, 323 F.3d 1288, 1291 (10th Cir. 2003). One way the plaintiff may do this is by demonstrating that "'he was treated differently from other similarly-situated employees who violated work rules of comparable seriousness.'" Salguero v. City Of Clovis, 366 F.3d 1168, 1176 (10th Cir. 2004) (*quoting* Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1230 (10th Cir.2000)). The plaintiff may also establish pretext by showing that the proffered reason for the defendant's action is so inconsistent, implausible, incoherent, or contradictory that it is unworthy of belief. Miller v. Automobile Club Of New Mexico, Inc., 420 F.3d 1098, 1123 (10th Cir. 2005).

Mr. Young cannot establish a prima facie case of retaliation fails because he has not presented any evidence tending to show that he engaged in protected activity. According to Mr. Young, he "assisted [John] Wahnee in an EEO complaint against Parisian filed in July, 2003, by confirming that Parisian knew of Wahnee's need for continuing accommodation but ignored that need because of personal dislike and age bias." [Doc. 39 at 9, ¶ 18]. However, the exhibits that Mr. Young cites for this proposition are either not a part of the

record on summary judgment or do not support the contention.  In any event, Judge Johnson

specifically noted in his *Memorandum Opinion and Order* granting *Defendant's Motion for*

*Summary Judgment* in 05cv427 that "it is not clear that merely 'confirming' a fact for

another employee is any manner of assistance that would amount to protected activity under

the anti-retaliation provisions of Title VII, the ADA, the Rehabilitation Act or the ADEA."

[Doc. 130 in 05cv427 at 9 n.12].  Mr. Young does not now present any support for the idea

that providing "confirmation" for a co-worker rises to the level of protected activity.[3]

In addition to providing "confirmation" on behalf of Mr. Wahnee, Mr. Young states

that:

> a) On April 26, 2004, I agreed to represent co-worker Terrance
> Parks at a Merit System Protection ("MSPB") hearing after he
> was terminated.  I also offered him the use of my office for
> privacy during the teleconferenced hearing[;]
>
> b) On April 29, 2004, I attended an EEOC hearing as a witness
> for another BIA employee, Chuck Cooper[;]
>
> c) During the remainder of 2004, I was involved in complaints
> of discrimination filed by other employees[.]

[Doc. 39; Exh. 1, Young Affidavit at 1].  However, all of this alleged protected activity

occurred well *after* the *Report of Investigation* that was the undisputed basis for Mr. Young's

removal was initiated (March 16, 2001) and issued (July 28, 2003). [See Doc. 35; Exh. A;

Att.1].  In this circumstance, "an inference of retaliation does not arise."  Slattery, 248 F.3d

---

[3]  The Court also notes that the *Affidavit* sworn by Mr. Wahnee makes no mention of his
EEO activity or any assistance that Mr. Young may have provided on his behalf. [See Doc. 39;
Exh. 3, Wahnee Affidavit].

at 95 (where adverse employment actions in the form of diminished job responsibilities began five months prior to employee's filing of EEOC charges, inference of retaliation did not arise). However, even assuming that Mr. Young were able to make his prima facie case, I conclude that the decision to remove him from federal service was based upon a legitimate, non-discriminatory reason, which Mr. Young has not exposed as pretextual.

Mr. Young does not dispute that he was "removed . . . solely for the reasons set forth in the [*Memorandum, Decision to Remove*]." [Doc. 35 at 5, ¶ 17; Doc. 39 at 2]. The *Memorandum, Decision to Remove*, in turn, "outlined the charges against [Mr. Young] arising from an investigation conducted by the Department of the Interior, Office of Inspector General (OIG)." [Doc. 35; Exh. F at 1]. As previously explained, the *Report* that was issued as a result of that investigation confirmed that Mr. Young, as Financial Manager, had engaged in a number of financial irregularities, including (1) making unauthorized commitments; (2) circumventing procurement practices; and (3) improperly using a government credit card. [See Doc. 35; Exh. A, Att. 1]. On the basis of the information contained in the *Report*, Mr. Parisian decided to propose Mr. Young's removal

> because of Mr. Young's high-level position, the fact that he knew or should have known that the actions he took were prohibited by Federal regulations, the fact that the offenses were not a single act of misconduct, but an ongoing pattern of inexcusable conduct and the fact that [Mr. Parisian] had a complete loss of confidence in Mr. Young. . . .

[Doc. 35; Exh. B at 5].

Finally, it is critical to remember that the Court's role in enforcing anti-discrimination statutes is to prevent intentional discriminatory practices, "not to act as a 'super personnel department,' second guessing employers' honestly held (even if erroneous) business judgments." Young v. Dillon Cos., Inc., 468 F.3d 1243, 1250 (10th Cir. 2006). Indeed, "[t]he relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it honestly believed those reasons and acted in good faith upon those beliefs." Swackhammer v. Sprint/United Mgt. Co., 493 F.3d 1160, 1170 (10th Cir. 2007). Notwithstanding his assertions of pretext, Mr. Young has not shown that Defendant did not honestly (even if erroneously) believe the accuracy of the charges of misconduct as set forth in the *Report*. See Osornio v. T-Mobile USA, Inc., 182 Fed.Appx. 834, 837 (10th Cir. 2006) (plaintiff did not establish pretext where he denied that he made threatening comments to former co-workers but failed to present evidence challenging former employer's perception of those comments). Moreover, Mr. Young's assertion that Mr. Parisian should have questioned or reinvestigated the charges of misconduct outlined in the *Report* does not establish pretext; to the contrary, Defendant's "refusal to re-investigate the situation and revisit its decision *do not affect the pretext question*." Id. at 838 (emphasis added) (*citing* Hardy v. S.F. Phosphates Ltd., 185 F.3d 1076, 1081-82 (10th Cir.1999) (rejecting plaintiff's suggestions for additional avenues of investigation and concluding that his claim of superficial investigation did not "give rise to an inference of pretext")). For these reasons, Defendant is entitled to entry of summary judgment in its favor.

## III. CONCLUSION

For the reasons set forth herein,  *Defendant's Motion to Dismiss* will be denied, and *Defendant's Motion for Summary Judgment* will be granted.

**IT IS, THEREFORE, ORDERED** that *Defendant's Motion to Dismiss* [Doc. 32], is **DENIED**;

**IT IS FURTHER ORDERED** that *Defendant's Motion for Summary Judgment* is **GRANTED**;

**IT IS FURTHER ORDERED** that the **PRETRIAL CONFERENCE** set for TUESDAY, September 2, 2008, at 9:00 a.m., the **CALL OF THE CALENDAR** set for THURSDAY, October 9, 2008, at 9:00 a.m., and the **JURY SELECTION/TRIAL** set for TUESDAY, October 14, 2008, at 9:00 a.m. are hereby **VACATED**.

**SO ORDERED** this 29th day of August, 2008, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
United States District Judge

17